UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
:
JOSHAU GUMORA, :
:
                              Plaintiff, :    17 Civ. 2300 (LGS)
:
            -against- :    **OPINION AND ORDER**
:
THE CITY OF NEW YORK, *et al.*, :
:
                           Defendants. :
------------------------------------------------------------ X

LORNA G. SCHOFIELD, District Judge:

       Plaintiff Joshua Gumora brings this action *pro se* against the City of New York (the "City") and various employees of the New York Department of Corrections ("NYDOC") pursuant to 42 U.S.C. §1983. Liberally construed, the Complaint raises claims for deliberate indifference to conditions of confinement which posed serious risks to Plaintiff's safety, failure to provide grievance services in violation of NYDOC rules and failure to provide law library access. Defendants move to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons below, the motion is denied with respect to the conditions of confinement claim against Defendants Wright, Guzman, Gramozis and Rene, but is granted with respect to all other Defendants and claims.

## I. BACKGROUND

### A. Factual Background

       The following facts are drawn from the Complaint and are accepted as true for the purpose of this motion. Because Gumora is advancing *pro se*, facts are also drawn from his brief in opposition to Defendants' motion to dismiss. *See Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion."). The facts are construed, and all

reasonable inferences are drawn, in favor of Plaintiff as the non-moving party. *See Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016).

Plaintiff Gumora is presently incarcerated in Mid-State Correctional Facility. The subject of this lawsuit is the conditions Gumora experienced while incarcerated as a pre-trial detainee under the custody of the NYDOC on Rikers Island. Between December 13, 2016, and January 2, 2017, Gumora was held in solitary confinement in G.R.V.C. Unit 13B on Rikers Island. During that time, Defendant Wright was Gumora's floor officer and Defendant Guzman was the unit's tour commander. Other inmates housed in the G.R.V.C. set fires every day, sometimes multiple fires in a single day. The Complaint documents five fires that Gumora experienced in December 2016.

A December 17, 2016, fire broke out in the two cells directly across from Gumora's. As the fires burned, "smoke spilled out of the cracks in the closed cell doors and engulfed the unit" to the point where Gumora had difficulty breathing. Although every cell in the G.R.V.C. is equipped with a sprinkler system that is designed to trigger in the presence of smoke, the sprinklers did not activate during the fire. Corrections officers unsuccessfully attempted to put out the fire by spraying a fire extinguisher through the centimeter wide crack that separates the cell door from the floor. It was impossible to put out the fire in this manner, because G.R.V.C. cell doors are designed to prevent liquids from being sprayed through the door -- thereby protecting officers from being splashed with human waste. As a result, the fire burned until it smoldered out by itself. Afterwards, fire officials reported to the unit. Gumora asked the fire officials why the sprinklers had not gone off; a fire official -- Defendant Gramozis -- explained that the fire suppression system "was turned off because fires in this unit are prevalent and the 'clean up is a bitch.'"

The sprinkler system also did not go off during any of the other fires. The officers always used their "preferred method" of trying to spray a fire extinguisher through the crack in

the door.  For example, on December 19, 2016, Defendant Wright unsuccessfully attempted to extinguish a fire by spraying a fire extinguisher under the cell door.  After that fire burned out, Captain Guzman called fire officials and Deputy Warden Rene to tour the unit, but they did not remedy the situation.  As a result, corrections officers never successfully extinguished any fire set in Gumora's unit; the fires blazed until they smoldered out on their own.  As a consequence of smoke inhalation during the various fires, Gumora suffers from a chronic hacking cough and shortness of breath, which prevent him from engaging in strenuous activities.  Gumora also suffers from PTSD, anxiety and depression stemming from his experience with the fires.

Cells in the G.R.V.C. were equipped with mattresses, which contain labels stating that the mattresses "meet[] the requirements of 16 CFR 1633 (federal flammability (open flame) standard for mattress sets) when used without a foundation.  This mattress is intended to be used without a foundation."  The officers in the G.R.V.C. nevertheless required inmates to use the mattresses with foundations.  When Gumora removed his mattress from its foundation because he feared it was a fire hazard, he was ordered to put the mattress back on the foundation or receive a misbehavior report and increased time in confinement.

Gumora unsuccessfully attempted to raise these issues with prison staff.  Officer Wright, who sat near Gumora's cell, continuously ignored Gumora's complaints.  Captain Guzman did not tour the unit to discuss problems with the inmates, but signed the logbook to state that he had done so.  Deputy Warden Rene and Warden Caputo also never toured the unit, and no law library or grievance services were provided.  The lack of these services led Gumora to file a 311 complaint, write a letter of complaint to Commissioner Ponte and file a Prisoners' Rights Project complaint.

## B. Procedural Background

The Complaint initially named the NYDOC as a defendant.  Because an agency of the City is not an entity that can be sued, and because of Gumora's *pro se* status and obvious

3

intention to sue the City, the Court directed the Clerk of Court to replace the NYDOC with the City as a defendant. *See* N.Y. City Charter ch. 17, § 396 ("[A]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law.").

Similarly, the Complaint mistakenly named Gumora's floor officer as "Johnson," and the fire official with whom Gumora spoke as Defendant John Doe #1. On September 20, 2017, the Court substituted Defendant Wright for Defendant "Johnson," and Defendant Gramozis for Defendant John Doe #1, in order to identify correctly Gumora's floor officer and the responding fire official.

## II. LEGAL STANDARDS

### A. Motion to Dismiss

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. On a Rule 12(b)(6) motion, "all factual allegations in the complaint are accepted as true and all inferences are drawn in the plaintiff's favor." *Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015).

A document filed *pro se* is to be liberally construed, and a *pro se* complaint is held to less stringent standards than formal pleadings drafted by lawyers. *See Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015). Accordingly, where a plaintiff litigates *pro se*, "we read his papers liberally and interpret them to raise the strongest arguments that they suggest." *Gerstenbluth v. Credit Suisse Sec. (USA) LLC*, 728 F.3d 139, 142 (2d Cir. 2013).

B. **42 U.S.C.A. § 1983**

The Complaint does not specify the legal theories upon which it rests, but in construing Gumora's papers to raise their strongest arguments, they are interpreted to raise claims under 42 U.S.C.A. § 1983. In order to succeed on a claim under 42 U.S.C.A. § 1983, "a plaintiff must allege that (1) the defendant was a state actor, i.e., acting under color of state law, when he committed the violation and (2) the defendant deprived the plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States." *Milan v. Wertheimer*, 808 F.3d 961, 964 (2d Cir. 2015) (citations omitted).

"[B]ecause vicarious liability is inapplicable to *Bivens* and § 1983 suits," a plaintiff "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ganek v. Leibowitz*, 874 F.3d 73, 92 (2d Cir. 2017) (citations omitted). Traditionally, personal involvement could be established in five ways:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)).

The United States Supreme Court subsequently clarified that a supervisor's mere "knowledge and acquiescence" cannot establish personal involvement under § 1983. *Iqbal*, 556 U.S. at 677.[1] Accordingly, "a defendant can be liable under section 1983 only if that defendant

---

[1] The Second Circuit is yet to directly state that *Iqbal* overrules *Colon*, but it appears to have done so. *See Grullon*, 720 F.3d at 139 (recognizing possible conflict between the cases); *see also Shaw v. Prindle*, 661 F. App'x 16, 18 (2d Cir. 2016) (summary order) ("Although the Supreme Court's decision in *Ashcroft v. Iqbal*, may have heightened the requirements for

5

took an action that deprived the plaintiff of his or her constitutional rights," and not "if the defendant's failure to act deprived the plaintiff of his or her constitutional rights." *Faulk v. N.Y.C. Dep't of Corr.*, No. 08 Civ. 01668, 2014 WL 239708, at *10 (S.D.N.Y. Jan. 21, 2014) (citations omitted); *accord Drew v. City of New York*, No. 16 Civ. 0594, 2016 WL 4533660, at *11 (S.D.N.Y. Aug. 29, 2016). "Moreover, mere complaints made to supervisory defendants are not enough to establish supervisory liability under § 1983." *Faulk*, 2014 WL at *10. (citations omitted); *accord Smith v. City of New York*, No. 14 Civ. 5927, 2017 WL 2172318, at *8 (S.D.N.Y. May 16, 2017).

To hold a municipality liable for a constitutional violation under § 1983, a plaintiff must prove that "the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978)); *accord Mitchell v. City of New York*, 841 F.3d 72, 80 (2d Cir. 2016). "It is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." *Town of E. Haven*, 691 F.3d at 80-1; *accord Gersbacher v. City of New York*, No. 14 Civ. 7600, 2017 WL 4402538, at *15 (S.D.N.Y. Oct. 2, 2017).

**III. DISCUSSION**

In this case, as Defendants' brief acknowledges, "[t]here is no dispute that the defendants were acting under color of state law." Accordingly, this opinion focuses exclusively on the second requirement of a § 1983 action: whether Gumora's papers adequately plead a constitutional violation. Liberally construed, Gumora's papers potentially raise claims for

---

showing a supervisor's personal involvement with respect to certain constitutional violations, we need not reach *Iqbal*'s impact on *Colon* in this case . . .") (internal citations omitted).

unconstitutional: (A) conditions of confinement with respect fire safety; (B) failures to provide and/or follow inmate grievance procedures and (C) failures to provide law library services. For the reasons that follow, Defendants' motion to dismiss is denied with respect to the claim for unconstitutional conditions of confinement against Wright, Guzman, Rene and Gramozis, but is granted with respect to all other claims and Defendants.

> **A.     Conditions of Confinement**

The strongest argument suggested by Gumora's papers is that inadequate fire safety procedures in the G.R.V.C. amounted to an unconstitutional condition of confinement to which certain Defendants were deliberately indifferent. "A pretrial detainee may establish a § 1983 claim for allegedly unconstitutional conditions of confinement by showing that the officers acted with deliberate indifference to the challenged conditions." *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (citing *Benjamin v. Fraser*, 343 F.3d 35, 50 (2d Cir. 2003)). Such claims, when made by a pretrial detainee, "are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eight[h] Amendment." *Darnell*, 849 F.3d at 29 (citing *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)). The analysis under both Amendments is the same, except that the Fourteenth Amendment analysis has a somewhat less exacting *mens rea* requirement. *Darnell*, 849 F.3d at 29; *accord Charles v. Cty. of Orange, N.Y.*, No. 16 Civ. 5527, 2017 WL 4402576, at *10 (S.D.N.Y. Sept. 29, 2017).

Making a showing of unconstitutional conditions of confinement under the Fourteenth Amendment requires that a detainee satisfy a two-prong test. *Darnell*, 849 F.3d at 29 (citations omitted). First, the detainee must satisfy the "objective prong" by "showing that the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process." *Id.* (citations omitted). Second, the detainee "must satisfy the 'subjective prong' -- perhaps better classified as a '*mens rea* prong' or 'mental element prong'-- showing that the

officer acted with at least deliberate indifference to the challenged conditions." *Id.* (citations omitted). The "subjective prong" can be met by showing that the defendants actually knew about the condition and disregarded it, or that a reasonable person should have known about the danger but it went disregarded. *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825 (1994)). For the reasons discussed below, Gumora's papers plead facts sufficient to satisfy this test.

### 1. Objective Prong

"[T]o establish an objective deprivation, 'the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health,' which includes the risk of serious damage to 'physical and mental soundness.'" *Darnell*, 849 F.3d at 30 (quoting *Schult*, 717 F.3d at 125); *LaReau v. MacDougall*, 473 F.2d 974, 978 (2d Cir. 1972)). In making that evaluation, "[t]here is no 'static test' to determine whether a deprivation is sufficiently serious; instead, 'the conditions themselves must be evaluated in light of contemporary standards of decency.'" *Darnell*, 849 F.3d at 30 (citing *Blissett v. Coughlin*, 66 F.3d 531, 537 (2d Cir. 1995)).

Conditions of confinement "can mutually enforce another, so long as those conditions lead to the same deprivation;" accordingly, the sum total of multiple conditions might be an objective constitutional deprivation, even if no single condition alone would violate the Constitution. *Darnell*, 849 F.3d at 31 (citing *Wilson v. Seiter*, 501 U.S. 294, 304 (1991)). The "proper lens" through which to assess conditions of confinement "is with reference to their severity and duration, not the detainee's resulting injury." *Darnell*, 849 F.3d at 30. Courts assess whether the conditions deprived the plaintiff of "a minimal civilized measure of life's necessities." *Schult*, 717 F.3d at 126.

Given these standards, prisons must "implement fire safety protections that do not expose prisoners to an unreasonable risk of serious damage to their future health." *Garcia v. Fischer*, No. 13 Civ. 8196, 2016 WL 297729, at *5 (S.D.N.Y. Jan. 22, 2016) (internal quotation

8

marks, citation, and brackets omitted). Courts in this district have consistently held that conditions of confinement that expose inmates to unreasonable levels of smoke satisfy the objective prong. *See, e.g., id.* at *6 ("the SCAC does state a 'conditions of confinement' claim based on certain defendants' deliberate indifference to the risk of exposing plaintiffs to heavy smoke for several hours."); *Benjamin v. Kerik*, No. 75 Civ. 3073, 1998 WL 799161, at *5 (S.D.N.Y. Nov. 13, 1998) ("fire safety protections must be afforded at a level that does not expose the plaintiffs to an unreasonable risk of serious damage to their future health."); *cf. Jones v. Goord*, 435 F. Supp. 2d 221, 249 (S.D.N.Y. 2006) ("Exposure to secondhand [cigarette] smoke can give rise to an Eighth Amendment violation.") (citing *Helling v. McKinney*, 509 U.S. 25, 35 (1993)).

In this case, Gumora's papers plead facts that are sufficient to establish an "unreasonable risk of serious damage" based on smoke inhalation. Inmates set fires in the G.R.V.C. every day -- sometimes multiple times a day. NYDOC staff never successfully extinguished the fires, because they always attempted to spray fire extinguishers through the cell doors; as a result, the fires burned out on their own. As the fires burned, smoke spilled into the unit, causing Gumora to develop breathing problems, PTSD, extreme anxiety and depression.

These pleaded facts are sufficiently serious to suggest that Gumora was exposed to an objectively unreasonable level of smoke, which deprived him of "a minimal civilized measure" of clean air. *Schult*, 717 F.3d at 126; *see, e.g.*, *Davis v. New York*, 316 F.3d 93, 101 (2d Cir. 2002) (holding that allegations that exposure to cigarette smoke caused the plaintiff "to suffer dizziness, difficulty breathing, blackouts, and respiratory problems . . . are not mere conclusory allegations, but may be sufficient to create an issue of fact as to the level of smoke to which Davis was exposed and, thus, whether his Eighth Amendment rights were violated."); *Hobson v. Fischer*, No. 10 Civ. 5512, 2011 WL 891314, at *5 (S.D.N.Y. Mar. 14, 2011) (COPD found sufficiently serious to support an Eighth Amendment claim at motion to dismiss stage);

*Covington v. Westchester Cty. Dept. of Corr.*, No. 06 Civ. 5369, 2010 WL 572125, at *6 (S.D.N.Y. Jan. 25, 2010) (collecting cases where courts have found that depression with suicidal ideation, or severe anxiety attacks, are sufficiently severe conditions to meet the objective prong). Accordingly, Gumora's papers satisfy the first prong of the conditions of confinement test.

### 2. Subjective Prong

In order to satisfy the "subjective prong," a "pretrial detainee must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35. "In other words, the "subjective prong" (or "*mens rea* prong") of a deliberate indifference claim is defined objectively." *Id.*

Given that fire and smoke are obviously dangerous conditions, whether a plaintiff satisfies the "subjective prong" with respect to smoke inhalation turns on the reasonableness of the firefighting measures adopted by prison officials. *Compare Garcia*, 2016 WL at *7 (denying a motion to dismiss where "the smoke condition was apparent at around 2:00 a.m., yet defendants did not call the fire department until 3:17 a.m. or begin evacuating plaintiffs until 4:00 a.m."), *with Hill v. City of New York*, No. 13 Civ. 8901, 2015 WL 246359, at *4 (S.D.N.Y. Jan. 20, 2015) (dismissing a deliberate indifference claim where the complaint stated that prison officials confiscated flammable materials from the inmates in an effort to prevent fires).

Here, Gumora's papers plead facts sufficient to suggest that the NYDOC staff knew about the prevalence of fires in the G.R.V.C., but did not take reasonable precautions to deal with the fires and accompanying smoke. Officers knew that fires would break out every day and billow smoke. When fires ignited, the officers attempted to spray fire extinguishers through the centimeter wide crack at the bottom of cell doors, even though they knew or should have known

from experience that such efforts would be ineffective because the doors are designed to prevent liquids from being sprayed through them. Nevertheless, after repeatedly failing to extinguish fires with this method, the NYDOC staff continued to employ it. Furthermore, NYDOC officers deactivated the sprinkler system in the G.R.V.C., because the "cleanup is a bitch" when the sprinklers go off. As a result, the fires were allowed to burn uninhibited until they smoldered themselves out.

Knowing that fires were prevalent in the G.R.V.C., and that the fires were not being effectively controlled, NYDOC staff forced inmates to use mattresses with a foundation, despite labels warning that the mattresses are "intended to be used without a foundation" in order to meet federal fire safety regulations.[2] When Gumora removed his mattress from its foundation because he felt it would be safer, he was ordered to put the mattress back on the foundation or receive a misbehavior report and increased time in confinement.

Defendant argues that courts in this Circuit have dismissed claims regarding the use (or lack thereof) of a foundation. However, in those cases, the plaintiffs complained of chiropractic problems, and their claims were dismissed because they had nothing to do with fire safety. *See, e.g., Campanello v. N.Y.C.D.O.C. Comm'r Joseph Ponte*, No. 16 Civ. 7432, 2017 WL 4122705, at *3 (S.D.N.Y. Aug. 22, 2017) (dismissing a claim because "the warning label on the mattress relates not to chiropractic health, but to fire safety."); *White v. Schriro*, No. 16 Civ. 6769, 2017 WL 3268202, at *3 (S.D.N.Y. July 31, 2017) (same). In this case, by contrast, Gumora sought to

---

[2] Defendants' briefs treat the mattress as an independent constitutional claim, rather than as a fact supporting the conditions of confinement claim for inadequate fire safety. However, Gumora's opposition explains that the mattress is "part of the Fourteenth Amendment violation" regarding fire safety -- not an independent constitutional violation. In light of that clarification, and because treating the mattress as a condition of confinement which "mutually enforces" the other inadequate fire safety measures in the G.R.V.C. is the "strongest argument" for a constitutional violation, this opinion treats it in that way. *Darnell*, 849 F.3d at 31; *Gerstenbluth*, 728 F.3d at 142.

remove his mattress from its foundation because he feared that it was a fire hazard, not because it hurt his back.

Given the known prevalence of fires in the G.R.V.C., the sum total of: (1) the continued use of an ineffective firefighting method; (2) the decision to turn off the sprinkler system and (3) forcing inmates to use mattresses in a way that does not meet federal fire regulations amounts to a deliberate indifference to conditions which "posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35. Accordingly, Gumora sufficiently states a claim for unconstitutional conditions of confinement under the Fourteenth Amendment.

### 3. Personal Involvement

Although Gumora sufficiently states a conditions of confinement claim, the pleadings are insufficient to suggest that Commissioner Ponte and Warden Caputo were personally involved in that violation.[3] Gumora's papers do not suggest that those Defendants knew about the fires in the G.R.V.C. or sanctioned the procedures used in response to the fires; Plaintiff alleges only that Ponte and Caputo failed to tour the unit, schedule law library access and provide grievance services, which, as discussed below, do not amount to constitutional violations.

Although Plaintiff alleges that he wrote a letter of complaint to Commissioner Ponte, even if the letter was about the fires (rather than non-provision of law library and grievance services), it would not be sufficient to make Commissioner Ponte personally involved in the violation. "[M]ere 'knowledge and acquiescence' cannot establish personal involvement . . ." *Faulk*, 2014 WL at *10 (citing *Iqbal*, 556 U.S. at 677); *accord Smith*, 2017 WL at *8 (holding

---

[3] Defendants' briefs raise personal involvement arguments with respect to only Ponte and Caputo; they raise no such arguments with respect to Wright, Guzman, Rene and Gramozis. Accordingly, the personal involvement of those four defendants is not addressed in this opinion. *See Johannes Baumgartner Wirtschafts-Und Vermogensberatung GmbH v. Salzman*, 969 F. Supp. 2d 278, 290 (E.D.N.Y. 2013) ("a Court need not entertain an argument that was not briefed."); *accord Brown v. City of New York*, 862 F.3d 182, 187 (2d Cir. 2017) ("The discretion trial courts may exercise on matters of procedure extends to a decision on whether an argument has been waived.").

that a plaintiff failed to state personal involvement on the part of the warden where the plaintiff had filed multiple grievances through the prison's formal grievance system); *Rivera v. Goord*, 119 F. Supp.2d 327, 344-5 (S.D.N.Y. 2000) (holding that a plaintiff's allegations that supervisory defendants ignored his complaints were insufficient to state a claim for supervisory liability). Consequentially, the conditions of confinement claim regarding fire safety is dismissed with respect to Ponte and Caputo.

### 4. Municipal Liability

The conditions of confinement claim regarding fire safety in the G.R.V.C. is also dismissed with respect to the City. Plaintiff does not allege, as required, that the unconstitutional conditions of confinement were "caused by a governmental custom, policy, or usage of the municipality." *Town of E. Haven*, 691 F.3d at 80; *accord Mitchell*, 841 F.3d at 80. Instead he alleges that the unconstitutional conditions of confinement were the product of decisions made by a few NYDOC officers assigned to the G.R.V.C.

### 5. Remedies

In addition to damages, the Complaint requests an injunction requiring that Defendants "immediately cease the dangerous actions and patterns and . . . implement safe equipment and procedures for all inmates . . . ." However, Gumora is no longer under NYDOC custody; he is currently incarcerated in Mid-State Correctional Facility.

"In this circuit, an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility." *Shepherd v. Goord*, 662 F.3d 603, 610 (2d Cir. 2011) (citations omitted). Consequentially, the claim for injunctive relief is dismissed as moot.

### B. Failure to Follow NYDOC Grievance Procedures

To the extent that Gumora's papers raise a procedural due process claim, it appears to be predicated on Defendants' violation of various prison policies relating to inmate grievances.

13

Plaintiff alleges that no grievance services were provided to inmates in the G.R.V.C., and that Defendants Rene, Caputo and Guzman violated NYDOC policy by failing to tour the unit to discuss inmate concerns. "To prove a violation of due process, a plaintiff must establish that (1) he possessed a liberty interest and (2) defendants deprived him of that interest as a result of insufficient process." *Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001) (alteration omitted)*; accord Walker v. Fischer*, 523 F. App'x 43, 44 (2d Cir. 2013) (summary order).

"[T]he law is settled that the failure to follow a DOCCS Directive or prison regulation does not give rise to a federal constitutional claim." *Al Hajj Ash Sheikh Siraj Abdul Aziz Muhammad v. Corr. Officer Douglas*, No. 15 Civ. 0935, 2016 WL 3082657, at *6 (S.D.N.Y. May 26, 2016) (citations and alterations omitted); *accord Holcomb v. Lykens*, 337 F.3d 217, 224 (2d Cir. 2003) (noting that whether the "defendants failed to follow the DOC Manual" was irrelevant to the constitutional inquiry).

This is particularly true with respect to failures to follow grievance procedures, because prison grievance procedures do not create a constitutionally protected liberty interest. *See, e.g.*, *Brown v. Graham*, 470 F. App'x 11, 13 (2d Cir. 2012) (summary order) ("Brown's argument that he has a federally-protected liberty interest in the state's compliance with its own prison grievance procedures is meritless."); *Johnson v. N.Y.C. Dep't of Health*, No. 6 Civ. 13699, 2008 WL 5378124, at *3 (S.D.N.Y. Dec. 22, 2008) ("[i]nmate grievance procedures are undertaken voluntarily . . . and are not constitutionally required.") (internal quotations omitted). As a result, even though it might have violated NYDOC internal rules, Defendants' failure to provide grievance services to Gumora and/or tour the unit cannot form the basis for a § 1983 claim.

    C.    **Failure to Provide Law Library Services**

Plaintiff also fails to state a claim with respect to law library access, which requires a plausible allegation "that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim -- for example, by demonstrating that he has been

unable to file a complaint or has had a complaint dismissed for failure to observe a technicality." *Benjamin v. Fraser*, 264 F.3d 175, 184 (citing *Lewis v. Casey*, 518 U.S. 343, 351 (1996)); *accord Corley v. City of New York*, 2017 WL 4357662 at *8 (S.D.N.Y. Sept. 28, 2017). In this case, Gumora's papers do not suggest that the lack of law library access was in any way detrimental to his efforts to purse a legal claim. Consequentially, the claim is dismissed.

IV. **CONCLUSION**

For the foregoing reasons, Defendants' motion is DENIED with respect to the conditions of confinement claim against Defendants Wright, Guzman, Rene and Gramozis. The motion is GRANTED with respect to all other claims and Defendants. The Clerk of Court is directed to close this motion at Docket No. 26, and to terminate the case with respect to Defendant Caputo, Defendant Ponte and the City. The Clerk of Court is also directed to mail a copy of this Opinion and Order to the *pro se* Plaintiff.

Dated: February 5, 2018
New York, NY

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE